UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Lyndsey M.D. Olson, on behalf of herself and all other similarly situated, | Civ. No. 10-2992 (PAM/JJK) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Citibank (New York State), Citibank, N.A., and The Student Loan Corporation, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss this putative class action. For the reasons that follow, the Court grants the Motion in part and denies it in part.[1]

**BACKGROUND**

This case involves the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. app. § 501 et seq., and specifically the provision requiring banks to cap the interest rate of active-duty servicemembers' loans, 50 U.S.C. app § 527.

---

[1] The Court reminds the parties that the use—or in the case of the briefs here, the overuse—of italics for emphasis is neither necessary nor appropriate. "A sound general rule is to use italics sparingly. If they are used too freely in the text of a brief, they are apt to be regarded as (what indeed they frequently are in fact) insults to any judicial reader's intelligence. It is perfectly possible to write a strong, forceful, even a fighting brief, without a single word italicized for emphasis." Frederick Bernays Wiener & Bryan A. Garner, Briefing and Arguing Federal Appeals 250 (5th prtg. 2008). Or, as one law firm's "Law Clerks' Top 10 Tips for Effective Appellate Advocacy" put it, "Overuse of emphasis (SCREAMING IN ALL CAPS or *overly highlighting important points*) is just plain annoying and not very persuasive." http://www.karrtuttle.com/PDF'S/tentips.pdf.

In 1997, Plaintiff Lyndsey Olson took out a student loan from Citibank to help pay for her last year at Stephens College in Columbia, Missouri. In 2001, she joined the Minnesota Army National Guard, and in 2005, she was called to active duty. She notified Citibank in March 2006 of her active-duty status, and by December 2006, Citibank had applied the SCRA's 6% rate cap to Olson's student loan, retroactive to the commencement of her active duty. Citibank also placed the loan in forbearance, although Olson had not requested such an accommodation.

Olson contacted Citibank and requested that Citibank remove the forbearance from her account. She alleges, and Citibank does not dispute, that Citibank makes forbearance a precondition to receive the 6% SCRA interest rate, and thus Citibank refused to remove the forebearance from the loan. Although a borrower is not required to make any payments on a loan in forbearance, Olson was not precluded from making payments on her loan during her active duty military service. In fact, she did make some payments toward her loan while on active duty.

When she left active duty, Citibank removed the forbearance and added the unpaid interest to the principal balance. Olson claims that this violates the SCRA because it amounts to increasing the amount of effective interest charged above the statutory 6% rate. She also claims that Citibank illegally conditions the application of the SCRA interest rate on the loan being placed in forbearance.

**DISCUSSION**

For purposes of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court takes all facts alleged in the complaint as true. See Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). The Court must construe the factual allegations in the complaint and reasonable inferences arising from the complaint favorably to the plaintiff and will grant a motion to dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986) (citations omitted). The complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

**A.   Changing Loan Terms**

Olson contends that Citibank changed the terms of its loan with her in several ways, all in violation of the SCRA. She quotes the SCRA as prohibiting a lender from changing "the terms of an existing credit arrangement" when a servicemember takes advantage of the SCRA interest-rate change. (Pl.'s Opp'n Mem. at 10 (quoting 50 U.S.C. app. § 518).) This section of the SCRA, however, does not apply to servicemembers who receive the interest-rate reduction. The section states, rather, that it applies to a servicemember who has received a "stay, postponement, or suspension" under the SCRA. 50 U.S.C. app. § 518. An interest-rate change is none of these things. In addition, the Complaint nowhere mentions this section of the SCRA. The Complaint relies only on the interest-rate requirements of § 527 and contains no claim under § 518.

However, the spirit, if not the letter, of the SCRA prohibits changing the terms of a

servicemember's loan when that servicemember avails herself of the protections of the SCRA. Thus, the question is whether the alleged "conditions" Citibank imposed constituted changes in the terms of Olson's loan that violate either the letter or the spirit of the SCRA.

### 1.     Forbearance

As Citibank points out, § 527 does not prohibit a creditor from putting a servicemember's loan into forbearance when he or she requests the SCRA interest-rate reduction. Indeed, Citibank repeatedly insists that forbearance is a benefit to the servicemember, although Citibank consistently refuses to explain why it requires a SCRA-effected loan to be put into forbearance, rather than offering forbearance as an option to an active-duty servicemember.

Olson argues that mandatory forbearance is not always a benefit to the servicemember. When a loan is in forbearance, the borrower no longer receives a monthly statement but rather receives only a quarterly statement. Thus, it is more difficult for a borrower to track the loan's balance for the purposes of making voluntary payments. Moreover, the loan is no longer eligible for Citibank's auto-pay program, which automatically deducts the loan payment from the borrower's bank account. Citibank argues that the borrower can set up an automatic or online bill payment through his or her bank account, but as Olson points out, a person being called to active duty in a far-flung locale may not have the time to set up such automatic payments, and once in the field, soldiers do not have reliable internet access with which to do so.

Citibank does not offer forbearance as a mere option. Rather, it requires SCRA-

effected loans to be placed in forbearance and informs servicemembers that they can continue to make payments on their own, something that is undoubtedly difficult for the servicemember to accomplish once on active duty. Although Citibank likely had good intentions when it decided to put SCRA-effected loans into forbearance, that decision at least arguably changed the terms of the loans without the servicemembers' permission. As noted, this violates the spirit, if not the letter, of the SCRA. Plaintiff has raised a plausible claim to relief on this point.

### 2. Compound Interest

Olson makes two different claims about the interest Citibank charges under the SCRA.

First, she contends that Citibank does not process SCRA interest-rate reductions in a timely manner. She requested the SCRA reduction in May 2006, although she entered active duty in March 2005; Citibank applied the reduction for the first time on her December 2006 statement. Thus, although she was eventually credited for the interest she paid above the 6% SCRA cap,[2] she contends that she was deprived of the time value of the excess interest from May to December 2006. As she admits, this "time value" amounts to about $20.

A delay of five months in applying the interest-rate reduction does not constitute a violation of the SCRA, and Olson's argument about the time value of the money is without merit. This portion of her claim in Count II fails to state a claim and must be dismissed.

---

[2] Olson insinuates, but does not ever make a specific claim, that she was not fully credited. Taking her allegations as true and disregarding the insinuations, for the purposes of this Motion the Court will consider her account fully credited for the interest charged above the SCRA cap.

Olson also argues that Citibank's practice of placing servicemembers' loans into forbearance and then adding the unpaid interest back into the loan at the end of the active-duty terms increases the servicemembers' effective interest rate above the statutory rate cap. The capitalization of interest, or the adding of interest back into principal, is not an unusual banking practice. Moreover, it is beyond doubt that the capitalization of interest does, in fact, raise a borrower's effective interest rate, by increasing the principal and thus the interest charged on that principal. The question here, however, is not whether the mere capitalization of interest on SCRA-effected loans violates the SCRA, but rather whether the capitalization of interest, when combined with mandatory forbearance, violates the SCRA.

As noted, capitalization of interest is not an unusual or nefarious practice in banking. Although the SCRA does not address capitalization, there can be little doubt that Congress understood that capitalization is a normal lending practice. By not specifically prohibiting capitalization with respect to servicemembers' loans, then, Congress impliedly permitted that practice.

But whether capitalization in general is permitted under the SCRA is not the end of the inquiry. Here, Citibank forces servicemembers' loans into forbearance, thus almost guaranteeing that there will be more interest to capitalize at the end of the active-duty period. Put another way, if the loan was not put into forbearance, the servicemember would continue to make regular payments of both principal and interest, and there would be less interest to capitalize at the end of the active-duty period. Because of the forbearance, however, the servicemember does not make payments and so more interest accrues and is capitalized,

6

which in turn increases the effective interest rate on the loan, not to mention the amount of the servicemember's payments.

Citibank's practice of forcing loans into mandatory forbearance and then capitalizing the interest on those loans may violate the SCRA. However, Olson did not raise a claim regarding capitalization in her Complaint. The Complaint mentions that the interest on her loan was capitalized, but none of the Counts in her Complaint make any claim about this capitalization. Rather, the Complaint claims merely that Citibank's failure to give her the interest-reduction in a timely manner violated the SCRA. Olson has requested leave to replead Count II, however, and given the Court's conclusions above, such leave is granted.

**B.     Unjust Enrichment**

Finally, Citibank argues that Olson's unjust enrichment claim fails. Olson contends that Citibank was unjustly enriched by placing her loan into mandatory forbearance, which results in the capitalizing of interest, and by allegedly insufficiently crediting her account with the excess interest she paid. As noted, however, she has offered nothing but vague insinuations to support her allegations that Citibank might not have fully credited her account. Thus, an unjust enrichment claim cannot lie with respect to this allegation.

However, Olson has succeeded in making out an unjust enrichment claim with respect to her contentions about mandatory forbearance and loan capitalization. Citibank strenuously argues that Olson cannot assert an unjust enrichment claim when the parties' relationship is governed by a valid contract. While that may be true, it is also true that the claims Olson makes do not, in large part, depend on anything other than federal law, rendering the contents

of her promissory note almost irrelevant to her claims. More important, however, is the fact that the Federal Rules of Civil Procedure permit pleading in the alternative. It may be that Olson will ultimately fail to establish a right to equitable relief, but at this stage of the litigation, she is entitled to make such a claim.

**CONCLUSION**

Citibank has established that Olson has failed to state a claim as to Count II of the Complaint. Accordingly, **IT IS HEREBY ORDERED that**:

1. Defendant's Motion to Dismiss (Docket No. 10) is **GRANTED in part** and **DENIED in part** as fully set forth above;

2. Count II of the Complaint (Docket No. 11) is **DISMISSED**; and

3. Olson may replead Count II of the Complaint within 20 days of the date of this Order.

Dated: Wednesday, December 22, 2010

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge