UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

_____

Ms. Lyndsey M.D. Olson, on behalf of
herself and all others similarly situated,                    Court File No. 10-2992 (PAM/JJG)

           Plaintiff,

   vs.

                                 **SECOND AMENDED**
Citibank (New York State),                         **CLASS ACTION COMPLAINT**
     A New York state chartered bank,

Citibank, N.A.,
     a Nevada commercial bank, and

The Student Loan Corporation,
     a Delaware corporation,

           Defendants.

_____


## <u>INTRODUCTION</u>

1.     Intrinsic to military service is sacrifice. Part of the sacrifice made by America's servicemen and women is financial sacrifice. Leaving behind family, friends and the comforts of civilian life to answer our country's call to duty inherently includes leaving behind careers, jobs, and financial security. The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. §§ 501-596 was enacted in recognition of this sacrifice.

2.      Both the letter and spirit of the SCRA acknowledge the sacrifice made by our military men and women so as õto provide for, strengthen, and expedite the national defense through protection í to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation í .ö 50 U.S.C.App. § 502.

3.      Defendants, regrettably, have failed to honor the active duty status of Americaøs fighting forces.  Despite the prohibitions of SCRA, 50 U.S.C. App. §§ 501-596, Defendants have charged excess interest on servicemembersø loans as well as imposing a forbearance status as a pre-condition to receiving the interest reduction. Defendants have illegally capitalized interest resulting from the mandatory forbearance they imposed on servicemembersø loans. They charged interest on the capitalized interest which raised the effective interest rate on the loan.

4.      Ms. Lyndsey M.D. Olson brings this class action on behalf of herself and other similarly situated servicemembers who have been or will be injured by Defendantsø failure to promptly and fully comply with the requirements of SCRA without added pre-conditions.

## PARTIES

5.      Ms. Lyndsey M.D. Olson (f/k/a Ms. Lyndsey M.D. Kimber, f/k/a Lyndsey Margaret Davis) is a Minnesota resident and a Captain in the Minnesota Army National Guard.  She began a period of active duty on March 1,

2

2005.  One year of her active duty service was spent in Iraq, from June 2008 to May 2009.

6.    Defendant Citibank, N.A. ("Citibank") is a national commercial bank, with its principal place of business at 3900 Paradise Road, Suite 127, Las Vegas, Nevada, 89109.

7.    Defendant Citibank (New York State) ("CNYS") is or was a New York state chartered bank, with its principal place of business at 99 Garnsey Rd., Pittsford, New York, 14534.  Upon information and belief, it merged with Citibank, N.A. in August of 2003.

8.    Defendant The Student Loan Corporation ("Student Loan") is a Delaware corporation, with its principal place of business at 750 Washington Blvd., Stamford, Connecticut, 06901. Upon information and belief, Defendant CNYS owned 80% of Student Loan's shares until its merger with Citibank, N.A. Also upon information and belief, Citibank and/or Citigroup sold its interest in the Student Loan Corporation at the end of 2010.

9.    At all relevant times, and at least until the end of 2010, all of the Defendants were wholly owned or controlled by Citigroup, Inc., a Delaware corporation with its principal place of business at 399 Park Avenue, New York, New York, 10043.

10.    Monthly statements and other correspondence received by Ms. Olson illustrate the closely intertwined relationship between the Defendants.  For

example, Ms. Olson's monthly statements were jointly captioned "Citibank" and "The Student Loan Corporation."  Payments, in turn, were sent to "Student Loan Corporation, c/o Citibank (Nevada), N.A."  Letters to Ms. Olson were typically sent on Citibank letterhead, but stated "CitiAssist student loans are originated by Citibank, N.A. and assigned to The Student Loan Corporation." *See* Exh. 1.   Pay Online statements referred to "Citi.com," and indicated that all copyrights were held by Citigroup, Inc. (parent company of Student Loan and Citibank, N.A.).

## JURISDICTION AND VENUE

11.   Ms. Lyndsey Olson is a "servicemember" as defined in the SCRA, 50 U.S.C. App. § 511(1), and is in "military service" as defined in §511(2)(A)(i).

12.   Defendants are "creditors" for purposes of the interest rate limitation provisions of the SCRA, 50 U.S.C. App. § 527.

13.   Plaintiff and each class member have a qualifying "obligation or liability" to Defendants within the meaning of the SCRA, 50 U.S.C. App. § 527(a).

14.   Defendants have systematically violated the interest rate limitation provisions of the SCRA, 50 U.S.C. App. § 527, by overcharging interest or by not crediting back correct amounts when they receive notice of military service status after the commencement of the military service and/or active duty period (the phrases "military service" and "active duty" are used

interchangeably throughout this Complaint to mean the period of time to which §527 applies).

15. Defendants have systematically violated the SCRA by unilaterally placing Plaintifføs and each class memberøs loans in forbearance status as a pre-condition to receiving the SCRA interest rate reduction.

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

17. Venue in the United States District Court for the District of Minnesota is proper under 28 U.S.C. §1391 because all Defendants routinely conduct business in the state of Minnesota, and thus can be said to õresideö here, and because a substantial part of the events or omissions giving rise to the claims in this action occurred in the State of Minnesota.

## FACTUAL BACKGROUND

**The Servicemembers Civil Relief Act:**

18. The Servicemembers Civil Relief Act was signed into law by President George W. Bush on December 19, 2003.  The SCRA is a revision of the Soldierøs and Sailorøs Civil Relief Act of 1940 (õSSCRAö), and was intended, in part, to ease the economic and legal burdens on military personnel called to active-duty status in Operation Iraqi Freedom.

19. National Guard and National Air Guard personnel on duty for training or other duty authorized by 32 U.S.C. § 502(f) at the request of the President, for or in support of an operation during war or national emergency declared

by the President or Congress are also covered by the SCRA, 50 U.S.C. App. § 511(2)(A)(ii).

20.   Among the protections granted to active-duty servicemembers under the SCRA is a six percent per year cap on most interest-bearing debts incurred before the start of active duty.  Thus, for example, if a new active-duty servicemember has pre-existing credit card debt incurring interest at an annual percentage rate ("APR") of 21%, the SCRA would require the credit card issuer to lower the APR on that debt to 6% per year throughout that servicemember's time of active duty.  Interest must be forgiven in excess of 6% per year, not just deferred, pursuant to SCRA, 50 U.S.C. App. § 527(a)(2).

21.   The servicemember must give written notice of the active duty status in order to obtain the 6% per year interest rate.  The written notice, however, can be given anytime up to 180 days after the end of the servicemember's active duty period.  SCRA § 527(b)(1).  If the notice is given after the start of the active duty period, then the creditor must apply the 6% per year retroactively to the start date of active duty service. *Id* at § 527(b)(2).

22.   The United States Supreme Court has held that the SSCRA must be read "with an eye friendly to those who dropped their affairs to answer their country's call."  *Le Maistre v. Leffers*, 333 U.S. 1, 6, 68 S. Ct. 371, 373 (1948).

23.     The SCRA limits the interest rate to be charged to a maximum of 6% per year.  Nowhere does the language of the act permit capitalization of interest (i.e. adding unpaid accrued interest to the principal balance and then charging interest on the total).  Also, nowhere does the language of the act permit compounding interest (i.e. charging interest upon previously accrued interest).

24.     Federal courts have long recognized that compounding results in a higher effective interest rate.

25.     Federal courts have long recognized that capitalization of interest also leads to a higher effective interest rate.

26.     §527 of the SCRA limits the interest that can be charged to õ6 percent per year,ö which means the interest must be calculated based on the simple interest method.

27.     In the absence of explicit language in a statute authorizing compounding of interest, the creditor is limited to simple interest.

28.     Similarly, contract law also follows the rule that the contract must specifically authorize compounding, and in the absence of explicit contract language, the creditor can only use a simple interest calculation.

29.     In the alternative, even if SCRA were silent as to method of interest calculation, which it is not, if the underlying note does not explicitly

provide for compounding or capitalization, the creditor cannot, unilaterally, compound or capitalize interest.

30.     Also, where a loan contract does not specifically authorize 1) placing the loan in forbearance, and 2) capitalization of interest accrued during the forbearance period, the creditor may not unilaterally change the loan terms and impose mandatory forbearance or capitalize interest accrued during the forbearance period.

31.     When a servicemember does not specifically agree to placement of his or her loan into forbearance status, the creditor may not unilaterally place the loan into forbearance status and then capitalize interest accrued during the forbearance period.

32.     The SCRA does not allow a creditor to unilaterally impose mandatory forbearance status on a servicemember's loan and then capitalize the unpaid interest simply as a result of the servicemember exercising his or her right to the 6% per year interest rate cap.  Furthermore, such actions by the creditor violate the spirit of the SCRA, a law that must be read liberally and with an eye friendly toward servicemembers.

**Ms. Olson's Loan:**

33.     Ms. Olson first joined the Minnesota Army National Guard in January 2001.  In 1998, she had earned a bachelor's degree from Stephens College, in Columbia, Missouri, majoring in philosophy, law, and rhetoric.  In order

to finance her final year of college, Ms. Olson applied for an $8,000 private student loan through Defendant Citibank's CitiAssist program.  On July 16, 1997, Ms. Olson received notice that her application had been approved, and she received her loan funds in two equal distributions, one on July 16, 1997, and the other on August 25, 1997.  *See* Exh. 2.

34.     Ms. Olson began making regular payments on her student loan in December 1998, and has never incurred a late payment fee.  The interest rate on her loan is variable, and has fluctuated between 4.25% and 9.25%.  As Ms. Olson sought further education, her loan periodically went into forbearance while she was in school.  During these periods of forbearance, the interest payments on her loan were capitalized, meaning the interest that accrued during these periods of forbearance was ultimately added to Ms. Olson's principal balance.

35.     In 2000, Ms. Olson enrolled in Hamline University School of Law in St. Paul, Minnesota with the hope of serving as a Judge Advocate ("JAG") in the United States Armed Forces after graduation.  When Ms. Olson graduated in 2003, she was primary editor of the Hamline Law Review. Following graduation, she attended the U.S. Army Judge Advocate General School in Charlottesville, Virginia.

36.     Ms. Olson began her active duty on March 1, 2005.  On May 6, 2008, Ms. Olson received orders deploying her to Iraq in support of Operation Iraqi

Freedom.   She   was   stationed   in   Balad,   Iraq,   where   she   served   as International Law Officer and Brigade Trial Counsel to the 34th Combat Aviation Brigade.  She returned from Iraq in June 2009 and was stationed at the U.S. Army Judge Advocate General School in Charlottesville, Virginia to obtain her LLM degree.  She finished her degree in May, 2010.

37.   On May 26, 2006, Ms. Olson notified Defendants in writing that she had been called to active duty, and enclosed copies of her orders.  *See* Exh. 3**.** Approximately five months later, Defendant Citibank notified her by letter that it had received her correspondence and would limit her interest to 6% per year as required by the SCRA.  The letter went on, however, to state that an (unrequested and mandatory) forbearance was also being "granted" on her loan, and that any accrued interest during this time would be capitalized when her forbearance ended. *See* Exh. 4.  Defendants took the above actions unilaterally.  Ms. Olson did not agree to the forbearance or the capitalization of interest.

38.   When Ms. Olson informed Citibank of her active duty status, she did not request that her account be placed in forbearance status. *See* Olson letter dated May 26, 2006, Exh. 3.   Instead, contrary to the SCRA, Citibank placed it in forbearance status on its own without her request or consent. When she called Citibank to advise them that she did not want her account placed in forbearance status, she was told it was Citibank's policy to place

accounts in forbearance status in order for the servicemember to receive the SCRA interest rate reduction, and that Citibank would not give her the rate reduction without that status change.

39.  Ms. Olson requested to speak to a manager regarding this policy and was told the same thing.

40.  The SCRA does not allow any conditions, other than what is stated in the statute, to be placed on an active duty servicemember's right to receive an interest rate reduction.

41.  The vast majority of servicemembers deployed overseas and in combat zones have limited, or no, access to the internet for purposes of going online and making payments on their account, and instead rely on "auto pay" to have their bills paid on a monthly basis while they are on active duty.  Ms. Olson's loan was on the automatic student loan payment service prior to being placed on this mandatory forebearance.

42.  The consequences of a servicemember's loan being placed in mandatory forbearance status include: a) being denied access to the autopay option, through which the servicemember could have made payments in order to continue reducing principal during the active duty period, b) the servicemember no longer receives monthly account statements in the mail while in forbearance, c) both of which result in most active duty

servicemembers not making regular payments while they are deployed because of the added effort they must commit to making a payment.

43.   Fewer payments being made during the forbearance period leads to a larger amount of interest capitalized and added to the principal balance at the end of the servicemembers' active duty and when the forbearance status is lifted by Defendants.  This results in higher compounded and/or effective interest rates, to the servicemembers' detriment and to the Defendants' benefit.

44.   Defendants are aware that requiring active duty servicemembers to go into forbearance status in order to receive their SCRA interest rate reduction will result in Defendants being able to capitalize higher amounts of interest at the end of the active duty period, compared to if forbearance status were not a requirement.

45.   If Defendants wished to offer forbearance status for neutral reasons, they could have simply made it optional, rather than a pre-condition to obtain the benefits of the SCRA.

46.   Although Ms. Olson sent her notice of active duty status to Citibank on May 26, 2006, and despite Citibank's duty under the SCRA to cap her interest at 6% per year, statements sent by Defendants Citibank and The Student Loan Corporation plainly show that Defendants continued to charge interest in excess of 6%.  For example, Ms. Olson's statement from

November 2006 showed that Defendants were charging interest at an annual percentage rate of 9.25%. *See* Exh. 5.

47.     Citibank eventually changed the interest rate to 6% on the December 2006 statement and stated that it kept the interest rate  at 6% (or lower based on the market rate, since Ms. Olson's loan carried an adjustable rate), thereafter.  Pursuant to the SCRA, Citibank was required to credit back to Ms. Olson the excess interest it charged her, going back to the beginning of her active duty period, i.e. March 1, 2005.  However, the online statements for the months following Defendants' November letter (Exh. 4) do not show Defendants credited back any interest to Ms. Olson's account for the previous months of overcharges.  There is no evidence in the online account information that the interest was credited back.  In the alternative, if Defendants credited back any interest, the amount of excess interest it credited back to Ms. Olson's account was insufficient to remedy the overcharges for the prior months.

48.     In the years prior to filing this action, Ms. Olson requested a copy of her account history on several occasions to determine whether Citibank had charged the correct interest on her loan pursuant to the SCRA and/or whether it credited back overcharged interest.  Citibank sent Ms. Olson a payment history at two different times.  *See* Exh. 6  and Exh. 7.  The two account histories do not match each other.  In fact, the histories contain

inconsistent entries.  *See e.g.*  the "Interest decrease for servicemembers" entry  dated 11/08/2006 for the amount of $733.30 on Exh. 6, and compare with the entries for the same time period on Exh. 7, where such an interest decrease is missing.

49.   Furthermore, the two account histories described above do not match the loan information on her monthly statements.  *See e.g.* The monthly statement for November 2006, Exh. 5, shows a principal balance of $9,789.05, and the loan history, Exh. 6, for 11/08/2006 shows a principal balance of $8937.49.   These and other inconsistencies made Ms. Olson's efforts to ascertain the exact amounts Defendants were charging her (or crediting back, as the case may be) very difficult.   These inconsistencies also make it easier for Defendants to disguise excess interest being charged despite the SCRA prohibitions.

50.   On several occasions prior to the filing of this action, Ms. Olson also requested, by telephone and in writing, a copy of her note or loan agreement to be sent to her.   Citibank (South Dakota), N.A. sent her a copy of her application rather than a formal note or contract.   *See* Loan Application ("Application") attached as Exh. 8.

51.   She later wrote to Citibank to specifically request the "Note" referenced in the copy of the Application it sent her. *See* Exh. 9. By letter dated December 30, 2009, Citibank stated there was no "Note," and that her

entire agreement was the Application.  *See* Exh. 10. (öThank you for your recent correspondence to Citibank, N.A. regarding your CitiAssist loan(s). The copy of the application is also a copy of the promissory note.  They are one in [sic] the same.ö).  Plaintiff, therefore, assumes the Application is the only remaining existing agreement for repayment of this loan.  *See* Loan Application attached as Exh. 8.

52.    The Application does not contain any provision allowing Defendants to compound interest on her loan, which means that her loan agreement is for simple interest.  Furthermore, Defendantsø own monthly statements confirm on the back of the statements that interest is calculated based on the ösimple daily interestö method.

53.    Likewise, the Application does not contain any provision allowing Defendants to capitalize interest.

54.    Defendants took Ms. Olsonøs loan off mandatory forbearance status sometime in early 2010.  After Defendants took her loan off forbearance, they capitalized accrued interest (added it into her principal balance) and began charging her monthly interest on the new, inflated principal balance. Ms. Olson is still making monthly payments on a balance that reflects and includes the capitalized interest resulting from the mandatory forbearance imposed on her account.  Also, as a result of the capitalized interest, and thus higher principal balance, the amount Ms. Olson owes Citibank is

higher than it would have been had the interest not been capitalized. Therefore, due to the combination of mandatory forbearance and resulting capitalized interest, Ms. Olson paid (and is still paying) a higher effective interest rate due to Defendants' violation of SCRA.

55.     Upon information and belief, Defendants have been and are capitalizing and/or compounding interest on servicemembers' loans where a SCRA rate reduction was requested, thus resulting in effective interest rates in excess of 6% per year.

## CLASS ACTION ALLEGATIONS

56.     Ms. Olson brings this action pursuant to Fed. R. Civ. P. 23(a), b(2), and b(3), on behalf of the following Class:

All Servicemembers who, during the period between July 13, 2004 and November 30, 2011, were in Military Service, and: (a) had one or more SCRA Loans that were then on, or were subsequently placed on, a forbearance automatically in order for the Servicemember to receive the six percent (6%) interest rate cap under Section 527(a) of the SCRA, and (b) provided the written notice to Defendants regarding their Period of Military Service under the SCRA before 180 days after the end of their military service.

Plaintiffs specifically exclude from the class:

    a.      Defendants' employees, officers, directors, or heirs.

    b.      Loans of servicemembers for whom Defendants successfully proved the servicemember's financial ability to repay loan did not change as a result of active duty status, pursuant to SCRA § 527(c).

16

c.      This Court, this Court's direct family members, and this Court's personnel.

57.    This class action satisfies all requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), including, but not limited to numerosity, commonality, typicality, adequacy, and predominance.

58.    **Numerosity:** Consistent with Fed. R. Civ. P. 23(a)(1), the proposed class "is so numerous that joinder of all members is impracticable."  At present, the United States of America has approximately 1.4 million active-duty servicemembers.   Defendants comprise some of the largest lending institutions in the country.   Class members will number in at least the thousands.  Detailed information on the Class can be ascertained through the review of account records maintained by Defendants, publicly available records, and appropriate discovery.  Joinder of the numerous active-duty servicemembers who carry obligations or liabilities to Defendants and who Defendants violated their SCRA rights would be impracticable.

59.    **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual class members.  These questions include:

- Whether Defendants are improperly processing military service notices received from active-duty servicemembers;

- Whether Defendants are failing to reduce to at least 6% the annual rates on servicemembers' interest-bearing obligations

or liabilities, or failing to forgive the correct amounts of such excess interest;

- Whether Defendants are improperly compounding interest on servicemembersø loan obligations;

- Whether the SCRA allows compounding of interest;

- Whether Defendants are improperly requiring servicemembersø loans to be put into forbearance status as a condition of receiving the SCRA interest rate reduction;

- Whether Defendants are improperly capitalizing excess interest on accounts that it places into forbearance; and,

- Whether Defendantsø capitalization of unpaid accrued interest from the mandatory forbearance period violates the spirit or letter of the SCRA.

60.    **Typicality:** The claims of Plaintiff, the proposed Class Representative, are typical of the class claims, in that (a) Plaintiff incurred an obligation or liability to Defendants bearing interest in excess of 6% per year; (b) Plaintiff requested in writing that her rate be reduced to at least 6% per year pursuant to the SCRA; (c) Defendants instead put her loan into mandatory forbearance status, failed to reduce her interest rate to at least 6% per year, and instead overcharged interest (or did not credit back the correct amount of interest); and (d) Defendants capitalized unpaid accrued interest at the end of the mandatory forbearance period .

61.    **Adequacy:** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff õwill fairly and adequately protect the interests of the class.ö Plaintiff has no adverse

or conflicting interests to the proposed class members.  She has retained counsel competent and experienced in complex class action litigation who possess the necessary financial resources to adequately and vigorously litigate this class action.

62.   **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impractical.  Prosecution of separate actions by individual class members would create an inherent risk of inconsistent and varying adjudications, with the concomitant risk of the establishment of incompatible and conflicting standards of conduct for Defendant. Furthermore, the damages suffered by individual class members are relatively small, such that the expense and burden of individual litigation makes it impossible for members of the class to individually redress the wrongs done to them.  In addition, servicemen and women who are class members should not be devoting time, energy and attention away from service to this Country in being bogged down by tracking the amount of interest charged on their accounts while on active duty, or by litigation of same.  Moreover, due to the vastly unequal market power between the parties, and the fact that many class members are in ongoing lending relationships with Defendants, a class action may be the only way, as a

practical matter, that their claims will be adjudicated.  Plaintiff knows of no

difficulty that would make a class action in this case unmanageable.


## CAUSES OF ACTION

### COUNT I
### DECLARATORY AND INJUNCTIVE RELIEF

63.   Plaintiff re-alleges all other paragraphs of this Complaint.

64.   Defendantsø policy requiring class membersø loans to be put into

forbearance status is an illegal pre-condition to the servicemembers

receiving the SCRA interest rate reduction.

65.   The SCRA does not allow such a pre-condition.

66.   As a result of the mandatory forbearance status, the servicemembers have

additional burdens placed on them if they wish to continue making

payments on their loans while on active duty.

67.   These additional burdens include: a) being denied access to the autopay

option, through which the servicemember could have made payments in

order to continue reducing principal during the active duty period, b) the

servicemember no longer receives monthly account statements in the mail

while in forbearance, c) both of which result in most active duty

servicemembers not making payments while they are deployed because of

the added effort they must commit to making a payment, d) more active

duty servicemembers  having increased interest to pay at the end of their

active duty period as a result of making no, or few, payments while they are

deployed, and e) higher likelihood of having a larger amount of interest

capitalized and added to their principal at the end of their active duty when

the forbearance status is lifted.

68.     Defendants' mandatory forbearance policy should be declared an illegal

pre-condition to receiving the benefits of the SCRA, and Defendants should

be enjoined from continuing said policy.

69.     Defendant's policy of compounding and/or capitalizing interest on the

obligations of the Plaintiff and other sevicemembers entitled to the benefits

of the SCRA is not allowed by the SCRA.

70.     Defendants' interest compounding and/or capitalization should be declared

illegal, and Defendants should be enjoined from doing so on those

obligations protected by the SCRA.

71.     Defendants' practice of capitalizing unpaid accrued interest into the

servicemember's principal loan balance when combined with the practice of

mandatory forbearance is in violation of the spirit and letter of the SCRA

and should be declared illegal.  Furthermore, Defendants should be

enjoined from engaging in such illegal practice.


**COUNT II**
**CHARGING INTEREST IN EXCESS OF THE SIX PERCENT PER YEAR**
**LIMITATION IMPOSED BY THE SERVICEMEMBERS CIVIL RELIEF ACT**

72.     Plaintiff re-alleges all other paragraphs of this Complaint.

73.   The Servicemembers Civil Relief Act, 50 U.S.C. App. § 527(a)(1) provides that "[a]n obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember, or the servicemember and the servicemember's spouse jointly, before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent per year during the period of military service."

74.   Ms. Olson's private student loan is an "obligation or liability" which qualifies for an interest rate reduction under the SCRA, 50 U.S.C. App. § 527(a).

75.   Plaintiff  made a written request for an interest rate reduction to Defendants, and enclosed a copy of the orders calling her to active duty.

76.   Despite written notice, Defendants nonetheless charged interest on Ms. Olson's student loan in excess of 6% per year, in violation of the SCRA.

77.   Upon information and belief, when Defendants do decrease the interest rate to 6% sometime after the military service period has begun, the amount of interest credited back to the servicemember's account (as required by the SCRA) is incorrect, resulting in an interest overcharge.

78.   The capitalization of interest raises the effective interest rate on the servicemember's loan.

79.   When a servicemember requests the 6% per year cap per SCRA, Defendants place the servicemember's loan into mandatory forbearance and

then capitalize any unpaid interest that is accrued during the servicemember's military service period. The mandatory forbearance and resulting capitalization of such interest violates the spirit and letter of the SCRA protections afforded to the servicemembers of this country.

80. Servicemembers, including Ms. Olson, are damaged by the capitalized interest resulting from the mandatory forbearance, as well as the interest Defendants charge on that capitalized interest for the remainder of the life of the loan.

**COUNT III**
**UNJUST ENRICHMENT AND MONEY HAD AND RECEIVED**

81. Plaintiff re-alleges all other paragraphs of this Complaint.

82. Defendants' conduct alleged in this Complaint results in an unjust enrichment and gives rise to a claim for money had and received. Defendants have taken undue advantage of Plaintiff and the other members of the Class.

83. Defendants are indebted to the Plaintiff and the Class in a certain sum "for money had and received by the Defendant for the use of the Plaintiff."

84. Defendants have collected sums of money from Plaintiff and the Class members under such circumstances that in equity and good conscience it cannot retain, which in justice and fairness belongs to the Plaintiff and the Class. The excess interest above the amount allowed by the SCRA retained by Defendants is illegal and does not belong to Defendants.

85.    In an unjust enrichment claim, the emphasis is on the wrongdoer's enrichment, not the victim's loss.  In particular, a person acting in conscious disregard of the rights of another should be required to disgorge all illegal amounts retained because disgorgement both benefits the injured parties and deters the perpetrator from committing the same unlawful actions again.

86.    As a result of Defendants' actions, described above, they have unjustly enriched themselves at the expense of Plaintiff and the Class.

87.    As a result of the foregoing, Plaintiff and the Class were deprived of money and suffered the loss alleged above.

## **RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, respectfully requests the following relief from this Court:

1.    Certify this case as a class action on behalf of the proposed Class as defined herein;

2.    Appoint Plaintiff Ms. Lyndsey M.D. Olson as class representative;

3.    Appoint the undersigned counsel as counsel for the Class;

4.    Grant judgment on Count I in favor of the Plaintiff and members of the Class declaring Defendants' policy of mandatory forbearance as a pre-

condition of obtaining the lower SCRA interest is illegal, and enjoin Defendants from continuing to impose it as a mandatory policy.

5.      Grant judgment on Count I in favor of Plaintiff and members of the Class declaring illegal Defendantsø practice of compounding interest on obligations protected by the SCRA and enjoin Defendants from continuing such practices.

6.      Grant judgment on Count I in favor of Plaintiff and members of the Class declaring illegal Defendantsø practice of capitalizing interest on obligations protected by the SCRA in combination with their policy of mandatory forbearance, and enjoin Defendants from continuing such practices.

7.      Grant judgment on Count I in favor of Plaintiff and members of the Class and enjoin Defendants from discontinuing their automatic payment service option when servicemembers exercise their rights to SCRA protections.

8.      Grant judgment on Count I in favor of Plaintiff and members of the Class and enjoin Defendants from discontinuing their mailed monthly statements when servicemembers exercise their rights to SCRA protections.

9.      Grant judgment against Defendants on Count II in favor of the Plaintiff and members of the Class finding that Defendants violated the SCRA and awarding damages in an amount to be determined;

10.     Grant judgment against Defendants on Count II in favor of the Plaintiff and members of the Class and recast and recalculate Plaintiffsø loans as if

interest had not been capitalized at the end of the mandatory forbearance period.

11.     Grant judgment against Defendants on Count III for the amount in which Defendants were unjustly enriched by way of their illegal actions;

12.     Enter an injunction prohibiting Defendants from placing servicemembersø loans into mandatory forbearance and then capitalizing unpaid accrued interest from the period of military service.

13.     Enter an injunction prohibiting Defendants from charging and collecting illegal interest in the future;

14.     Award the Class prejudgment interest at the applicable rate;

15.     Award the Class all direct and consequential damages allowed by law;

16.     Award the Plaintiff Class all appropriate equitable and injunctive relief;

17.     Award the Plaintiff Class their reasonable costs and attorney fees; and

18.     Grant any other further relief that the Court deems appropriate.


## DEMAND FOR JURY TRIAL

Plaintiff and the Plaintiff Class demand a jury trial in this action for all claims so triable.

Respectfully Submitted,

Dated:  March 27, 2012

CROWDER TESKE, P.L.L.P.

/s/ Vildan A. Teske_____
William H. Crowder (MN # 0020102)
Vildan A. Teske (MN # 0241404)
Marisa C. Katz (MN # 0389709)
222 South Ninth Street, Suite 3210
Minneapolis, Minnesota 55402
Telephone: (612) 746-1558
Fax: (651) 846-5339

Richard J. Fuller (MN # 0032669)
Attorney at Law
4005 Fourth Street South, Suite 202
Minneapolis, Minnesota 55415
Telephone: (612) 294-2600
Fax: (612) 294-2640

Martin A. Carlson (MN # No. 0299650)
LAW OFFICES OF MARTIN A. CARLSON, LTD.
247 Third Ave. S.
Minneapolis, Minnesota 55415
Telephone: (612) 359-0400
Fax: (612) 341-0116

**ATTORNEYS FOR PLAINTIFF LYNDSEY
M.D. OLSON, AND THE CLASS**